**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

LARRY L. THOMAS, JR.,                    :
                                         :
                    Plaintiff,           :
                                         :
v.                                       :        Case No. 7:25-cv-13-WLS-ALS
                                         :
Judge JAMES L. PRINE, *et al.*,          :
                                         :
                    Defendants.          :

_____

**ORDER AND RECOMMENDATION**

In accordance with the Court's previous orders and instructions, Plaintiff has filed a Recast

Complaint. (Doc. 25). Plaintiff also filed a motion for leave to file a Second Amended Complaint

(Doc. 26), a motion for financial assistance with discovery (Doc. 28), a motion to file a writ of

mandamus (Doc. 29), a motion to expedite an answer on the writ of mandamus (Doc. 30), and a

motion for leave to supplement the Second Amended Complaint (Doc. 31). Since the Second

Amended Complaint is quite similar to the Recast Complaint, Plaintiff's motion for leave to file

same is **GRANTED**, and it will be the operative pleading in this action. *See Pintando v. Miami-*

*Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (holding that generally, "[a]n amended

pleading supersedes the former pleading; the original pleading is abandoned by the amendment,

and is no longer a part of the pleader's averments against his adversary." (citation omitted)). For

the following reasons, it is **RECOMMENDED** that the Second Amended Complaint be

**DISMISSED without prejudice** and that Plaintiff's motions for financial assistance, to

supplement the Second Amended Complaint, and for a writ of mandamus be **DENIED.**

**PRELIMINARY SCREENING OF THE SECOND AMENDED COMPLAINT**

## I.        Standard of Review

The Prison Litigation Reform Act ("PLRA") directs courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. 28 U.S.C. § 1915A(a).[1] Courts must also screen complaints filed by a plaintiff proceeding IFP. 28 U.S.C. § 1915(e). Both statutes apply in this case, and the standard of review is the same. "*Pro se* filings are generally held to a less stringent standard than those drafted by attorneys and are liberally construed." *Carmichael v. United States*, 966 F.3d 1250, 1258 (11th Cir. 2020) (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). On preliminary review, the Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id*. (citations omitted). A claim can be dismissed as malicious if it is knowingly duplicative or otherwise amounts to an abuse of the judicial process. *Daker v. Ward*, 999 F.3d 1300, 1308, 1310 (11th Cir. 2021) (affirming dismissal of duplicative complaint "in light of [prisoner's] history as a prolific serial filer").

A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Although Plaintiff was released from jail after he filed this case, he is still considered a "prisoner" for purposes of the PLRA. *See, e.g., Danglar v. Dep't of Corr.*, 50 F.4th 54, 59 (11th Cir. 2022) ("In assessing whether the provisions of the PLRA apply to a plaintiff, this Court looks to the prisoner's 'status *at the time he filed his complaint.*'" (quoting *Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir. 2002)).

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id*. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty*., 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See, e.g*., *Bingham v. Thomas*, 654 F.3d 1171, 1176-77 (11th Cir. 2011) (affirming dismissal of certain claims at preliminary screening because prisoner failed to allege sufficient facts to show a violation of his rights), *abrogated on other grounds by Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc).

## II.    Factual Allegations

Plaintiff's claims arise from his treatment at the Thomas County Jail. (Doc. 26-3, at 7). Plaintiff identifies himself as a "black man with a Native American Heritage." *Id.* at 13. As described in more detail below, Plaintiff believes that more than four dozen Defendants conspired to injure him at the jail because of his race or ethnicity and in retaliation for exercising his right to complain about the conditions of his confinement. *See, e.g., id.* at 14-15. Named Defendants in this action include Georgia Governor Brian Kemp, Georgia First Lady Marty Kemp, Superior Court Judge James Prine, representatives of the Thomas County Sheriff's Office, Thomasville Police Department, the Thomas County Jail, and at least nine other inmates. *Id.* at 11-13.

3

According to the Second Amended Complaint, Plaintiff was arrested and incarcerated at the Thomas County Jail on September 20, 2024. (Doc. 26-3, at 14). On or around October 9, 2024, jail officials transferred another inmate, John Sharp ("Inmate Sharp"), to Plaintiff's dorm. *Id.* Plaintiff alleges that he complained to jail officials, including Jailers Haire, Delmont, Lopez, Roberts, Gosby, Jackson, Harold, Philips, and Lieutenant Metcalf about being housed with Defendant Sharp because Inmate Sharp had previously been charged with murder, was currently charged with violent crimes, and had already been involved in a previous altercation with another inmate. *Id.*

Beginning on October 15, 2024, Plaintiff contends Jailer Haire threatened to harm Plaintiff, stating "that plaintiff had to pay for filing a lawsuit against Governor Brian Kemp" and "was not going to make it out of jail alive." (Doc. 26-3 at 14). Plaintiff also alleges that "[o]ne day [Jailer Haire] punched plaintiff and ran out the dorm." *Id.*

On or about November 9, 2024, Plaintiff claims he was assaulted at the jail by various jailers. (Doc. 26-3, at 14-17). Prior to the assault, Jailer Haire reiterated his contention that Plaintiff should not have sued Defendant Kemp, and Plaintiff agreed that he would not "file anymore [sic] lawsuits against Governor Brian Kemp, [Georgia First Lady] Marty Kemp, Judge James Prine, or Sheriff Carlton Powell." *Id.* at 14-15. Jailer Haire responded, "its [sic] too late you about to get killed." *Id.* at 15. Plaintiff contends Jailers Harold, Haire, Delmont, and Sergeant Bryant then "brutally beat plaintiff," "forc[ed] painkillers down plaintiff's mouth," and shot Plaintiff in the head with a shotgun. *Id.* Plaintiff also alleges that Jailers Harold, Haire, Franklin, Delmont, and Sergeant Bryant "committed Aggravated sexual assault, Aggravated sexual battery, and

4

Aggravated sodomy against plaintiff." *Id.* Plaintiff states he suffered "life threatening injuries" as a result.[2] *Id.*

Next, Plaintiff alleges that Jailer Delmont forced Plaintiff to walk back to his dorm at gunpoint, and Sergeant Bryant made Plaintiff stand in the dorm's dayroom. (Doc. 26-3, at 15). Jailer Delmont shot Plaintiff in the head again and beat Plaintiff with the shotgun. *Id.* Jailer Haire, Sergeant Bryant, Jailer Franklin, and Jailer Cooper also "came upstairs and joined [Jailer Delmont]." *Id.* In addition, jail officials "clothed" inmates John Sharp, Bobby Harris, Quintavius Moore, Michael Haynes, Earnest Arnold, Jonathan Bass, Michael Camp, and Nolan Messenger "with State authority and allowed them to join them in torturing plaintiff." *Id.* Plaintiff contends these defendants all assaulted him and "committed aggravated sodomy and aggravated sexual[] battery against plaintiff with the intent of causing plaintiff serious bodily injury." *Id.* at 15-16. Plaintiff further contends that Jailer Haire, Jailer Delmont, and Sergeant Bryant "told the inmates that . . . yall [sic] do not have to worry about any charges be brought against you. You are with us, you helped us because we asked you to, and you are clothed with state authority and were acting Under Color of State Law." *Id.* at 16. Plaintiff "was knocked unconscious for a while," and after he "struggled to get up," he "was immediately shot again by Jailer Delmont." *Id.* Plaintiff again lost consciousness. *Id.*

After Plaintiff regained consciousness, he attempted to call for medical assistance, but no one helped him. (Doc. 23-6, at 16). Instead, Jailer Delmont said he did not feel sorry for Plaintiff, used racial slurs against him, and fired the shotgun several more times. *Id.* Plaintiff also contends Jailer Delmont told the other inmates they could do whatever they wanted to Plaintiff and he "won't say a word." *Id.* About an hour later, inmates including Messenger, Sharp, Harris, Morris,

---

[2] Plaintiff appears to refer to this assault as the "top floor incident." *See, e.g., id.* at 22.

Wright, Haynes, Arnold, Camp, and Bass entered the cell and again beat and sexually assaulted Plaintiff. *Id.* Plaintiff states he "was so hurt that he was crawling on his hands and knees," and he "crawled to the stairs and hit call button #54." *Id.* He "told Jailer Haire that he received life-threatening injuries from other inmates" and required emergency medical care because he felt "like he was about to die." *Id.* at 16-17. Jailer Haire "refused to aid plaintiff," but he did state that he would review the surveillance footage with Jailer Delmont and Sergeant Bryant to see what had happened. *Id.* at 17. In the meantime, Plaintiff "laid on the dayroom table," and inmates Harris and Sharp again punched Plaintiff. *Id.* Jailer Haire returned to the dayroom and said "that they reviewed the video camera footage of the incident and found no wrongdoings against plaintiff. They said all yall [sic] involved we like that, yall [sic] did an excellent job, we seen yall [sic] beat him, strip him, and sexual assault him." *Id.* Jailer Haire then asked the other inmates why they did not "off [Plaintiff]." *Id.*

About thirty minutes after this, Plaintiff alleges Jailer Haire, Jailer Delmont, and Sergeant Bryant "entered Dorm A-3 with a huge group of people," including Governor Brian Kemp. (Doc. 23-6, at 17). Plaintiff avers that Governor Kemp "yelled everybody that wants to participate in retaliation against Larry Thomas to state your name and say I agree." *Id.* Plaintiff further avers that Governor Kemp and his wife, Marty Kemp, both stated their names and said, "I agree." *Id.* He then states that the nearly four dozen remaining Defendants each stated their names and agreed to retaliate against Plaintiff. *Id.* at 17-18. Then, all of these Defendants attacked Plaintiff "by punching and kicking him in the head, face, neck, shoulders, back, arms, chest, abdomen, genitals, legs, [and] feet;" "slammed plaintiff against the stairs hard several times;" "slammed plaintiff head, and choked plaintiff;" and "committed aggravated sexual assault, aggravated sexual battery, and

aggravated sodomy against plaintiff." *Id.* at 18. In addition, "Governor Brian Kemp choked plaintiff with a choking device causing plaintiff to faint and have difficulty breathing."[3] *Id.*

Plaintiff again requested medical attention, but no one would help him get to medical. (Doc. 26-3, at 18). Jailer Haire again referred to Plaintiff using multiple racial slurs. *Id.* Jailer Roberts spat in Plaintiff's face and again beat and sexually assaulted Plaintiff. *Id.* Jailer Haire additionally forced Plaintiff to swallow four ibuprofen "so [Plaintiff] can die" and told other inmates not to help Plaintiff because he "hate[s]" Plaintiff and "want[s] to see him die." *Id.* Another jailer, Silas, acknowledged "that the other jailers were wrong" and said "she would try to seek [Plaintiff] some help," but she never did. *Id.*

The next day, Defendant CJ—the medical staff supervisor—came to Plaintiff's dorm but did not give him any medical attention despite Plaintiff's requests for treatment. (Doc. 26-3, at 18). Defendant CJ also failed to provide Plaintiff with medical treatment the next day. *Id.* On the third day, Defendant CJ "walked inside [Plaintiff's] cell with a testing kit, checked [his] injuries, told [Plaintiff] that he sustained severe injuries, but she could not take plaintiff to the hospital herself or send for an ambulance." *Id.* at 19. Defendant CJ gave Plaintiff ibuprofen. *Id.* For three days, Defendant CJ brought Plaintiff medication because Plaintiff "was to[o] hurt and weak to move." *Id.* Defendant CJ, however, refused to take Plaintiff to the hospital or agree to Plaintiff's requests for a CAT scan or x-rays. *Id.*

On or about November 29, 2024, Plaintiff again complained to Defendant CJ and "Genesis" medical staff nurse Defendant Monica Arnold about his injuries. (Doc. 26-3, at 19). On December 3, 2024, Plaintiff went to sick call. *Id.* Another "Genesis" nurse, Defendant Ward, "completed a medical diagnosis of [Plaintiff's] physical injuries," and Plaintiff told Defendants

---

[3] Plaintiff appears to refer to these combined assaults as the "dayroom incident." (Doc. 26-3 at 26).

Ward, CJ, and Arnold that he had been beaten and sexually assaulted. *Id.* Defendant Ward told Plaintiff that she would require "more information" before she would help him and said she would "do a full body examination on [his] next appointment." *Id.* However, she declined Plaintiff's requests to transfer him from the dorm where he was attacked because "that [was] not [her] job." *Id.* Starting in December of 2024, Plaintiff filed medical grievances, but he alleges he was never given proper medical attention. *Id.* at 19-20.

Finally, Plaintiff alleges that Defendant McNeil, a deputy, "asked [Plaintiff] to write the incident on a Thomas County Sheriff Office application that states that if . . . [Plaintiff's] accusations and statements were found to be false that [he] could be charged and sentenced from 1 year to 5 years in jail." (Doc. 26-3, at 20). Plaintiff states this was an "attempt to keep [Plaintiff] in jail so that [he] couldn't receive proper medical attention, proper law tools to pursue a case, to punish [him] with more time for acknowledging the identities of several jailers who participated in the incident against [him], to help conceal the crimes committed by the jailers, and to possibly commit another malicious incident against" Plaintiff. *Id.* Plaintiff "refused to risk his freedom and life by filing the grievance presented by Deputy D. McNeil," and Defendant McNeil thus "refused to pursue an investigation against the jailers without the oppressive paperwork." *Id.* He also told Plaintiff that if he filed any additional grievances about the incident, he would have to "write statements against the Jailers with a charge of false statement included if the Jailer is not found guilty." *Id.*

While Plaintiff primarily appears to raise claims under 42 U.S.C. § 1983, he also lists several other federal statutes under which he may be attempting to raise claims. *See, e.g.,* Doc. 26-3, at 20. In addition, Plaintiff has listed several state law provisions that he seems to believe provide a cause of action. *See id*. As a result of the alleged violations of state and federal law, Plaintiff

seeks monetary damages, a jury trial, attorney fees and costs, and "[a]ny additional relief this court deems just, proper, and equitable." *Id.* at 36-42.

### III.    Plaintiff's Claims

After careful review, the Court finds that the Second Amended Complaint must be dismissed without prejudice as frivolous, for failing to comply with the Court's previous orders and instructions, and pursuant to the Court's inherent authority to control its docket. As noted above, the Court has a duty to "dismiss [a] case at any time if the court determines that . . . the action . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i); *see also* 28 U.S.C. § 1915A ("On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]"). A frivolous claim lacks an arguable factual or legal basis. *Miller*, 541 F.3d at 1100. A lawsuit is also "frivolous if its claims involve factual contentions that are fanciful, fantastic, irrational, and/or delusional." *Porter v. Governor*, 667 F. App'x 766, 767 (11th Cir. 2016) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)); *see also Miller*, 541 F.3d at 1100 (observing that "wildly implausible allegations in the complaint should not be taken as true").

"Separate and apart from the PLRA, a district court may also dismiss a case under its inherent authority, which it possesses as a means of manag[ing] its own docket so as to achieve the orderly and expeditious disposition of cases." *McNair v. Johnson*, 143 F.4th 1301, 1306 (11th Cir. 2025) (internal quotation marks and citations omitted). This inherent authority also permits the Court to dismiss a case *sua sponte* for failure to obey court orders and rules. *See, e.g., Foudy v. Indian River Cnty. Sheriff's Office*, 845 F.3d 1117, 1126 (11th Cir. 2017) (affirming dismissal without prejudice where plaintiffs ignored court's instructions "to explain their grounds for joinder in any complaint naming multiple defendants"). The Court may also dismiss a case pursuant to Federal Rule of Civil Procedure 41(b) for failure to follow its orders and instructions. *See, e.g.,*

*Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Rule 41(b) authorizes a district court to dismiss a complaint for failure to prosecute or failure to comply with a court order or the federal rules.").

The Eleventh Circuit has repeatedly held that "[a]lthough [dismissal] is a severe sanction, its imposition is justified when a party chooses to disregard the sound and proper directions of the district court." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985), *abrogated in part on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Moreover, "dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). "That's so even where less drastic sanctions are available." *Amerson v. Comm'r*, No. 20-11179, 2022 WL 628418, at *3 (11th Cir. Mar. 4, 2022) (internal quotation marks omitted). And "[a] district court will rarely be found to have abused its discretion in dismissing without prejudice because the plaintiff is ordinarily permitted to simply refile." *McNair*, 143 F.4th at 1306; *see also Daker v. Dozier*, No. 19-11213, 2022 WL 2154114, at *1 (11th Cir. June 15, 2022) ("[D]ismissals without prejudice are generally not an abuse of discretion.").

In the Order to recast, the Court advised Plaintiff that if he failed to state an actionable conspiracy claim involving the nearly three dozen Defendants he named in the original Complaint. (Doc. 18, at 2-4). Most importantly, the Court told Plaintiff "that his claims that Brian Kemp and Marty Kemp, Prine, Powell, and Burgess orchestrated a conspiracy involving dozens of people appear to be frivolous." *Id.* at 6. The Court advised Plaintiff that his "factually unsupported allegations that the Governor of Georgia—and his wife—along with at least one state court judge bribed the former Thomas County Sheriff and the captain of the jail to harm Plaintiff are 'wholly incredible.'" *Id.* (citing *Denton*, 504 U.S. at 32-33). The Court also noted that Plaintiff had previously "raised similar broad-based conspiracy claims against high-ranking state officials" and

10

cited directly to a previous court order finding Plaintiff's "conspiracy claims against 'state judges, law enforcement officers, Georgia's past and present governors, and various organizations' regarding a state child support claim to be 'fanciful,' 'fantastic,' or 'delusional.'" *Id.* (quoting *Thomas v. Governor's Off. for Ga.*, CASE NO.: 7:22-CV000112 (WLS), 2024 WL 583484, at *7, 10 (M.D. Ga. Feb. 13, 2024)). The Court explained that Plaintiff would have to recast his Complaint because the frivolous allegations of conspiracy were so intertwined with the remainder of the Complaint that the Court could not examine Plaintiff's remaining claims to determine whether they could independently survive the preliminary screening process. *Id.* at 4. The Court also explained how Plaintiff could draft his statement of claims to avoid this problem. *See id.* at 5-6. And the Court clearly warned Plaintiff "that the filing of frivolous claims may subject his recast complaint to dismissal." *Id.* at 7.

Instead of abandoning his frivolous conspiracy claims, Plaintiff doubled down on them. He added approximately a dozen new Defendants to the conspiracy, and he no longer alleges that Governor Kemp and Marty Kemp simply "called the Thomas County Jail" and "bribed" the remaining Defendants to retaliate against Plaintiff. (Doc. 1, at 27). Rather, he alleges that many of the Defendants "went over the highway in disguise" and traveled to Thomas County to violate Plaintiff's constitutional rights in person. (Doc. 26-3, at 13, 37-40). He avers, under penalty of perjury, that Governor Kemp showed up at the jail and asked every single Defendant named in this lawsuit if they wished to retaliate against Plaintiff. *Id.* at 17; *see also id.* at 42 (verification signed by Plaintiff stating, "I certify under penalty of perjury that the foregoing is true and correct."). Incredibly, each of the four dozen Defendants was present at the jail at that time, because Plaintiff avers that each one responded to Governor Kemp by stating his or her name, saying "I agree," and "commit[ted] aggravated sexual assault, aggravated sexual battery, and aggravated sodomy against plaintiff." *Id.* at 17-18. This is the exact baseless scenario that the Court warned Plaintiff against

11

repeating in both this case and in another case filed before the Court. *Thomas*, 2024 WL 583484, at *7, 10.[4] As Plaintiff was already advised, because the allegations of the conspiracy between Defendants are so interwoven throughout Plaintiff's pleadings, the Court cannot separate his frivolous claims from any potential remaining claims. And quite frankly, the patently frivolous nature of the conspiracy claims in the Second Amended Complaint completely undermine the veracity of the rest of Plaintiff's allegations.

Given the blatant frivolity of Plaintiff's conspiracy claims, the inseparability of his other claims, his disregard for the Court's previous orders and instructions, and his history of filing similarly frivolous claims, the undersigned concludes that the Second Amended Complaint should be dismissed without prejudice as frivolous pursuant to the PLRA, for intentionally disregarding the Court's previous orders and instructions, and pursuant to the Court's inherent authority to protect the integrity of its docket. Since the undersigned is recommending that this case be dismissed without prejudice, Plaintiff may simply refile it within the applicable statute of limitations, which has not yet expired. Plaintiff, however, is again cautioned that the Court will not tolerate the filing of additional frivolous or malicious claims, and the continued filing of such claims could lead to additional sanctions, including but not limited to dismissal of his claims with prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to file a Second Amended Complaint (Doc. 26) is **GRANTED**, but it is **RECOMMENDED** that the Second Amended Complaint be

---

[4] Like this case, Plaintiff's prior case also featured a vast conspiracy involving 66 Defendants that was orchestrated in part by then-governor, Sonny Perdue, *see, e.g.*, Doc. 20, at 20 in *Thomas v. Governor's Office for the State of Georgia*, Case No. 7:22-cv-112-WLS (M.D. Ga. Oct. 18, 2022); allegations that Plaintiff was shot at multiple times (including inside the Thomas County Courthouse), *see, e.g.*, *id.* at 27; and claims that many individuals, including multiple county sheriffs, at least one judge, and at least one district attorney sexually assaulted Plaintiff, *see e.g.*, *id.* at 22-23, 25-26, 33, 36.

**DISMISSED without prejudice** and that Plaintiff's pending motions (Docs. 28, 29, 30, 31) be **DENIED.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable W. Louis Sands, Senior United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 13th day of February, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE

13